1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                             EASTERN DISTRICT OF CALIFORNIA

10

11   LAVONNA CASTELLANO; and                No.  1:15-cv-0407-MCE-KJS
     PROJECT SENTINEL, INC.,
12
                   Plaintiffs,
13                                           **MEMORANDUM AND ORDER**

14           v.

15   ACCESS PREMIER REALTY, INC.
     d/b/a Access Property Management;
16   DANIEL AKULOW; DOLORES
     VALENZUELA; and ELVIA J.
17   ADDISON, Individually and as Trustee,
     Disclaimer Trust, Addison Revocable
18   Trust dated June 24, 1999

19                   Defendants.

20
             Plaintiffs LaVonna Castellano and Project Sentinel, Inc. (collectively "Plaintiffs")
21
     allege violations of the Fair Housing Act ("FHA") by defendants Access Premier Realty,
22
     Inc. and its representatives (collectively "Defendants").  Plaintiffs bring the present
23
     Motion for Partial Summary Judgment (ECF No. 23) seeking summary adjudication of
24
     Defendants' liability.  For the reasons that follow, Plaintiffs' Motion is GRANTED.[1]
25
     ///
26
     ///
27   _____

28        [1] Because oral argument would not have been of material assistance, the Court ordered this
     matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

                                              1

1

## BACKGROUND[2]

2

3      In September 2012, Plaintiff LaVonna Castellano rented and occupied an

4   apartment unit in a complex located at 1405 Eucalyptus Avenue in Newman, CA ("the

5   Apartment").  Defendant Access Premier Realty, doing business as Access Property

6   Management ("APM"), managed Plaintiff's Apartment complex during her tenancy.

7   Defendant Daniel Akulow served as a principal for APM and directed the management of

8   the Apartment complex on APM's behalf.  Defendant Elvia Addison owned the

9   Apartment complex as a trustee and paid Defendant Dolores Valenzuela to work as the

10  on-site manager during the relevant period.

11      Plaintiff Castellano was over sixty years old at the time she resided at the

12  Apartment, and suffered from a variety of mental and physical impairments.  In

13  particular, Castellano claims that she suffered from various mental health conditions,

14  including panic attacks, anxiety, depression, psychotic disorder and post-traumatic

15  stress disorder.  Castellano Decl. at ¶ 8, ECF No. 11.  Castellano was prescribed

16  medication for these ailments and received federal SSI disability benefits for her mental

17  illnesses.  Id.  While Castellano resided at the Apartment, she had a house cat,

18  "Mr. Munchkin."  Id. at ¶¶ 3, 12.  Castellano kept the cat in the Apartment, and states in

19  her declaration that the cat gave emotional support and kept her company when she

20  was alone.  Id. at ¶ 12.  According to Castellano, the cat helped Castellano feel calmer

21  and less anxious, which helped lessen the effects of some of her physical problems.  Id.

22  Having Mr. Munchkin in the Apartment made Castellano "feel better, both mentally and

23  physically, and helped [her] to get through each day."  Id.

24

25      [2] Unless otherwise noted, the following facts derive from Defendants' Statement of
    Undisputed/Disputed Facts.  See Defs.' Stmt. of Undisputed Facts, ECF No. 26.  The Court recognizes

26  that Defendants have made numerous evidentiary objections to Plaintiffs' Statement of Undisputed Facts
    (ECF No. 23), which will be specifically addressed as necessary in the body of this Memorandum and

27  Order.  To the extent the Court relies on evidence to which Defendants object, however, Defendants'
    objections are overruled.  Defendants' responses to Plaintiffs' undisputed facts largely consist of
    evidentiary objections and do not seriously challenge the accuracy of Plaintiffs' undisputed facts.  With few

28  exceptions, Defendants fail to point to any evidence contradicting Plaintiffs' factual assertions.

1    On January 29, 2013, Defendant APM sent Castellano a letter directing her to
2  remove her cat from the Apartment or face eviction, citing the Apartment complex's "no-
3  pets" policy.  In response, Castellano sent a handwritten letter to APM in February 2013
4  asking that she be allowed to keep her cat.  The letter stated that she suffered from
5  physical and mental handicaps; she needed the cat for emotional and mental support;
6  the cat caused no damage; the cat was neutered, vaccinated and house-broken; and
7  that Castellano was willing to pay a pet deposit.  Around the same time, Castellano's
8  daughter sent an email to APM asking that her mother be permitted to keep the cat.  An
9  APM employee responded via email that "[Plaintiff] will not be able to keep her cat"
10  Espinosa Decl. Ex 1, RFA Ex. L, ECF No. 23. (emphasis in original).  On February 20,
11  the Stanislaus County Department of Aging & Veteran Services sent a letter to APM
12  requesting a waiver of the Apartment complex policy against pets as a reasonable
13  accommodation for Castellano's disabilities and a cessation of demands that she get rid
14  of her cat or face eviction.

15    Defendants responded to this request in a February 25 letter from Defendant
16  Akulow to Plaintiff Castellano requesting documentation of her disability-related need for
17  an animal.  Akulow's letter required that Castellano provide documentation from an
18  attending physician or psychiatrist "no later than 3/1/13 to prevent lease violation
19  eviction."  Espinosa Decl. Ex 1, RFA Ex. D.  On March 4, Defendant Valenzuela served
20  Castellano with a "Notice to Perform Covenant (Cure) or Quit" directing Castellano to
21  remove the cat from her apartment within five days.  Shortly thereafter, Valenzuela
22  served Castellano with a March 15 "Notice of Termination of Tenancy" effective April 15,
23  2013.  The Notice stated, in relevant part, that "[c]ause for action is breach of tenet [sic]
24  lease agreement regarding failure to adhere to property pet police [sic]."  Espinosa Decl.
25  Ex 1, RFA Ex. F.

26    In response to these notices, Castellano contacted Plaintiff Project Sentinel, Inc.
27  seeking assistance in keeping her cat at the Apartment.  Project Sentinel is a non-profit
28  fair housing organization.  On March 22, 2013, Project Sentinel sent APM a letter on

1   Castellano's behalf requesting that APM rescind the termination notice and permit

2   Castellano to remain in the apartment with her cat as a reasonable accommodation for

3   her disabilities.  The letter was accompanied by two letters from the Newman Medical

4   Clinic stating that Castellano was under the care of Dr. Philip Kalman at the clinic, listing

5   Castellano's medical diagnoses, and stating that keeping a companion animal would

6   benefit her health.  Defendant Akulow responded to Project Sentinel in an April 2 letter

7   stating that Plaintiff Castellano's request for a reasonable accommodation was denied.

8   In response, Project Sentinel sent APM a letter dated April 8 from the Newman Medical

9   Clinic describing Castellano's mental and physical impairments and stating that an

10   emotional support animal "would ease her anxiety and depression" and could "benefit

11   her by improving her medical symptoms."  Espinosa Decl. Ex 1, RFA Ex. I.  In reply,

12   Akulow sent a fax dated April 12, 2013 declining to credit the April 8 letter from Newman

13   Medical Clinic, declining to grant the requested accommodation, and seeking further

14   detailed information as to Plaintiff Castellano's diagnoses.

15       On or around May 1, 2013, Plaintiff moved out of the Apartment in order to avoid

16   the further possibility of eviction.  Plaintiff Castellano worried that she could lose her

17   Section 8 housing voucher if she was evicted.

18

19                              **STANDARD**

20

21       The Federal Rules of Civil Procedure provide for summary judgment when "the

22   movant shows that there is no genuine dispute as to any material fact and the movant is

23   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

24   Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

25   dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

26       Rule 56 also allows a court to grant summary judgment on part of a claim or

27   defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

28   move for summary judgment, identifying each claim or defense—or the part of each

                                            4

1    claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

2    Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

3    motion for partial summary judgment is the same as that which applies to a motion for

4    summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

5    Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

6    judgment standard to motion for summary adjudication).

7         In a summary judgment motion, the moving party always bears the initial

8    responsibility of informing the court of the basis for the motion and identifying the

9    portions in the record "which it believes demonstrate the absence of a genuine issue of

10   material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

11   responsibility, the burden then shifts to the opposing party to establish that a genuine

12   issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

13   Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

14   253, 288-89 (1968).

15        In attempting to establish the existence or non-existence of a genuine factual

16   dispute, the party must support its assertion by "citing to particular parts of materials in

17   the record, including depositions, documents, electronically stored information,

18   affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

19   not establish the absence or presence of a genuine dispute, or that an adverse party

20   cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

21   opposing party must demonstrate that the fact in contention is material, i.e., a fact that

22   might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

23   Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

24   Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

25   demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

26   such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

27   477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

28   before the evidence is left to the jury of "not whether there is literally no evidence, but

1   whether there is any upon which a jury could properly proceed to find a verdict for the

2   party producing it, upon whom the <u>onus</u> of proof is imposed." <u>Anderson</u>, 477 U.S. at 251

3   (quoting <u>Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)) (emphasis in original).

4   As the Supreme Court explained, "[w]hen the moving party has carried its burden under

5   Rule [56(a)], its opponent must do more than simply show that there is some

6   metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  Therefore,

7   "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

8   nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> 87.

9         In resolving a summary judgment motion, the evidence of the opposing party is to

10   be believed, and all reasonable inferences that may be drawn from the facts placed

11   before the court must be drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at

12   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

13   obligation to produce a factual predicate from which the inference may be drawn.

14   <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

15   810 F.2d 898 (9th Cir. 1987).

16

17                                   **ANALYSIS**

18

19         Plaintiffs allege two violations of the FHA: (1) refusing to make a reasonable

20   accommodation because of a handicap in violation of 42 U.S.C. § 3604(f); and

21   (2) interfering with the exercise or enjoyment of rights guaranteed by the FHA in violation

22   of 42 U.S.C. § 3617.  The Court addresses each claim separately.

23         **A.     Defendants Violated 42 U.S.C. 3604(F) by Failing to Provide**
             **Reasonable Accommodation.**
24

25         The FHA makes it unlawful to "discriminate against any person in the terms,

26   conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

27   facilities in connection with such dwelling, because of a handicap of [that person].

28   42 U.S.C. § 3604(f)(2)(A).  Prohibited discrimination includes "a refusal to make

                                       6

1  reasonable accommodations in rules, policies, practices, or services, when such

2  accommodations may be necessary to afford such person equal opportunity to use and

3  enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

4      In order to state a FHA claim based on failure to reasonably accommodate, a

5  plaintiff must show that (1) plaintiff suffers from a handicap as defined by the FHA;

6  (2) defendants knew or reasonably should have known of the plaintiff's handicap;

7  (3)accommodation of the handicap may be necessary to afford plaintiff an equal

8  opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable[3]; and

9  (5) defendants refused to make such accommodation.  Dubois v. Ass'n of Apartment

10  Owners of 2987 Kalakua, 453 F.3d 1175, 1179 (9th Cir. 2006).  The Court considers

11  each element in turn.

12              **1.      Plaintiff Castellano is Handicapped under the FHA.**

13      The undisputed facts show that Plaintiff Castellano is handicapped under the

14  FHA.  A "handicap" is (1) a physical or mental impairment which substantially limits one

15  or more of such person's major life activities; (2) a record of having such an impairment;

16  or (3) being regarded as having such an impairment.  42 U.S.C. § 3602(h).  Under the

17  FHA, a "physical or mental impairment" is any mental or psychological disorder,

18  including "emotional illness."  24 C.F.R. § 100.201(a) (defining terms under the FHA).

19  "Major life activity" means activities that are of central importance to daily life, such as

20  caring for one's self, performing manual tasks, speaking, breathing and working.

21  24 C.F.R. § 100.201(b).

22      Here, there is no question that Plaintiff Castellano suffers from mental and

23  physical impairments that substantially limit her major life activities.  Castellano suffers

24  from a wide variety of ailments, including anxiety disorder, depression and psychotic

25  disorder.  Kalman Decl. ¶4, Ex. B, ECF No. 23.  Castellano has numerous physical

26 ───────────────

27  [3] Some courts have treated the reasonableness requirement as an implicit prerequisite for the requirement that accommodation of the handicap is necessary to give a plaintiff equal opportunity to use and enjoy the dwelling.  See Giebeler v. M & B Associates, 343 F.3d 1143, 1148 (9th Cir. 2003).  This difference does not change the Court's analysis, and the Court elects to treat both requirements

28  separately here.

1   health problems including asthma, chronic obstructive pulmonary disease, and knee

2   pain.  Id.  She uses a cane and an electric wheelchair and installed a ramp in order to

3   get in and out of the front door to the Apartment.  Castellano Decl. ¶ 7.  Castellano also

4   receives federal SSI disability benefits.  Id. at ¶ 9.   See e.g., Sinisgallo v. Town of Islip

5   Housing Authority, 865 F. Supp. 2d 307, 338 (E.D. N.Y. 2012) ("As a general matter, in

6   most cases, individuals who meet the definition of disability for purposes of receiving SSI

7   or SSDI benefits also qualify as disabled under the federal disability statutes.")  In

8   addition, Castellano's treating physician, Dr. Philip Kalman, stated that Castellano

9   suffers from a variety of mental and physical impairments: anxiety disorder, depression,

10  asthma, chronic obstructive pulmonary disease and cardiovascular disease, among

11  other ailments.  Kalman Decl. ¶ 7.  Dr. Kalman asserts that Castellano's medical

12  conditions affected her ability to breath, walk, perform manual tasks and work.  Id. at ¶ 5.

13       Defendants present no evidence challenging Castellano's assertions regarding

14  her medical conditions or challenging Dr. Kalman's diagnoses.  Defendants' so-called

15  factual disputes consist almost entirely of evidentiary objections, which the Court

16  overrules.

17              **2.      Defendants Knew or Should Have Known of Plaintiff**
                         **Castellano's Handicap.**
18

19       It is also uncontroverted that Defendants knew or should have known of Plaintiff

20  Castellano's handicap.  Castellano and Project Sentinel sent numerous letters and other

    correspondence describing Castellano's medical conditions.  Castellano initially informed
21
    Defendants of her disabilities in a handwritten February 2013 letter.  Espinosa Decl.
22
    Ex 1, RFA Ex. B.  The letter stated that she suffered from mental illness and physical
23
    handicaps and that she "[needed] her cat for emotional and mental support."  Id.
24
    Castellano's daughter sent APM an email also stating that Castellano had physical
25
    handicaps and that the cat provided emotional support.  Espinosa Decl. Ex. 1, RFA
26
    Ex. L.  In addition to these letters, Project Sentinel and the Stanislaus County
27
    Department of Aging & Veterans Services sent several letters to APM and its
28

1   representatives describing Castellano's disabilities and asking for permission to keep the

2   cat.  Espinosa Decl. Ex. 1, RFA Exs. C, G.  Newman Medical Clinic also provided a letter

3   describing Castellano's medical conditions and stating that an emotional support animal

4   would benefit her.  Espinosa Decl. Ex. 1, RFA Ex. I.

5       Defendants respond that they were merely trying to ascertain the extent of

6   Castellano's disability and were reasonably seeking additional documentation.  Even if

7   this is true, it does not serve to rebut the charge that they knew or should have known of

8   Castellano's disabilities.  See Smith v. Powdrill, 2013 WL 5786586, at *5-6 (C.D. Cal.

9   Oct. 28, 2013) (letters from disabled individual and physician describing impairments

10  and seeking accommodation showed that defendants knew or should have known of

11  disability).  In fact, Castellano stated on her rental application for the Apartment that she

12  received SSI disability benefits.  Akulow Decl. Ex. A, ECF No. 26.  Defendants present

13  no evidence suggesting that they had any doubt as to whether Castellano was in fact

14  disabled.    While Defendants argue that their repeated demands for more specific

15  information about Castellano's disability amounts to a lack of knowledge, that contention

16  lacks merit since, in the face of the detailed information already provided on Castellano's

17  behalf, the Court cannot ascertain what information could ever satisfy the knowledge

18  requirement were Defendants' position to be accepted.  The Court declines to adopt

19  such an extreme position.  Castellano's rental application and subsequent letters and

20  supporting documents suffice to put Defendants on notice of her disabilities.

21          **3.    Accommodation was Necessary for Plaintiff Castellano to Use
                    and Enjoy the Dwelling.**

22

23      The undisputed facts show that Plaintiff Castellano's requested accommodation

24  was necessary for Castellano to fully use and enjoy the unit.  An accommodation is

25  necessary when there is evidence showing that the desired accommodation will

26  affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the

27  disability.  Smith v. Powdrill, 2013 WL 5786586, at *6 (C.D. Cal. Oct. 28, 2013); see

28  Book v. Hunter, 2013 WL 1193865 (D. Or. Mar. 21, 2013) ("[T]here must be an

1  identifiable relationship, or nexus, between the requested accommodation and the

2  individual's disability.")

3      A Notice issued by the Department of Housing and Urban Development (HUD),

4  the agency charged with administering the FHA, provides further guidance on the

5  accommodation requirement.  See HUD Office of Fair Housing & Equal Opportunity,

6  FHEO Notice FHEO-2013-01 ("Notice FHEO-2013-01").  The Notice states that where a

7  disabled person has a "disability related need for an assistance animal" and "the animal .

8  . . provide[s] emotional support that alleviates one or more of the identified symptoms or

9  effects of a person's existing disability" then the FHA requires the housing provider to

10  provide an exception to a "no-pets" policy.  Notice FHEO-2013-01 at 3.  The Court grants

11  HUD's Notice considerable and substantial deference.  See Pfaff v. U.S. Dep't of Hous.

12  & Urban Dev., 88 F.3d 739, 747 (9th Cir. 1996) ("[HUD's] interpretation of the FHA

13  'ordinarily commands considerable deference' because 'HUD [is] the federal agency

14  primarily assigned to implement and administer Title VIII.'"].

15      As the Court previously discussed, Plaintiff Castellano suffers from a variety of

16  mental illnesses, including panic attacks, anxiety, depression, psychotic disorder, and

17  post-traumatic stress disorder.  She asserts that interacting with and feeding the cat

18  gave her emotional support and companionship.  The cat helped her to feel calmer and

19  less anxious.  Castellano asserts that the cat made her feel better, both mentally and

20  physically, and helped her to get through the day.  Dr. Kalman also states that keeping

21  an emotional support animal helped to ease and control Castellano's feelings of stress,

22  anxiety and depression.  Kalman Decl. at ¶ 6.  In turn, alleviating Castellano's stress and

23  anxiety helped to reduce the symptoms of her other impairments such as asthma,

24  chronic obstructive pulmonary disease and cardiovascular disease.  Id. at ¶ 7.

25      Defendants do not substantively challenge this evidence.  The uncontroverted

26  evidence shows that keeping a cat as an emotional support animal helped reduce

27  Castellano's stress and anxiety, which in turn helped reduce the symptoms of her other

28  ailments.  Thus, there is no triable issue of fact as to whether accommodation was

1    necessary in order for Castellano to use and enjoy the Apartment.

2            **4.      The Requested Accommodation was Reasonable.**

3            The undisputed facts show that Plaintiff Castellano's requested accommodation

4    was reasonable.  An accommodation is reasonable under the FHA when it imposes no

5    fundamental alteration in the nature of the program or undue financial or administrative

6    burdens.  Giebeler v. M & B Associates, 343 F.3d 1143, 1157 (9th Cir. 2003).  The

7    history of the FHA establishes that landlords may have to shoulder certain costs, so long

8    as they are not unduly burdensome.  United States v. California Mobile Home Park

9    Mgmt. Co., 29 F.3d 1413, 1416 (9th Cir. 1994).

10           Here, although the precise contours of the burden of proof are uncertain,

11   Giebeler, 343 F.3d at 1156-57, Plaintiffs have sufficiently shown that their requested

12   accommodation was reasonable.  Plaintiff Castellano claimed her cat was "sweet

13   tempered and caused no damage" and advised Defendants that she was willing to "pay

14   a pet deposit if that would help."  Espinosa Decl. Ex 1, RFA Ex. B.  Defendants do not

15   seriously contest any of Plaintiffs factual claims about the reasonableness of providing

16   an exception for Castellano's cat.  Most significantly, Defendant Akulow states that APM

17   has permitted emotional support animals in the past for other tenants.  Akulow Decl. at

18   ¶ 18.  Moreover, Akulow asserts that he "would have done so [provided an exemption] in

19   the case of Ms. Castellano had she simply provided the documentation I was reasonably

20   requesting."  Id.  Even aside from the fact, as discussed above, that Plaintiffs did provide

21   all necessary documentation, these statements are strong evidence that providing

22   Castellano with an exception to the "no-pet" policy would impose no fundamental

23   alteration of Defendants' housing services nor pose undue financial or administrative

24   burdens.

25           Defendants' claims that they were worried about fleas and the safety of other

26   residents also fail to create a triable issue.  Any determination that an emotional support

27   animal poses a threat of harm to others or would damage the property of others must be

28   based on an individualized assessment of the specific animal's actual conduct.  Notice

1    FHEO-2013-01 at 3.  The assessment may not be speculative and may not be based on

2    evidence of harm that other animals have caused.  Id.  Defendants have not

3    contradicted Plaintiffs' assertions that Castellano's cat was neutered, vaccinated and

4    housebroken, nor have they provided any evidence specifically related to Castellano's

5    cat.  Defendants have only proffered general concerns about health and safety.  These

6    general concerns do not rebut Plaintiffs' claim that allowing Plaintiff Castellano to keep

7    her cat was a reasonable accommodation.

8             **5.     Defendants Failed to Provide Plaintiff Castellano Such an
                        Accommodation.**
9

10           Finally, the uncontroverted evidence shows that Defendants failed to provide

11   Plaintiff Castellano with a reasonable accommodation when they refused to permit

12   Castellano to keep her cat.  Defendants responded to Plaintiffs' repeated requests for

13   accommodation with denial and delay.  Defendants' argument that they did not refuse to

14   provide the accommodation and were merely seeking additional information is not well-

15   taken.  Even though refusal may be accompanied by other acts, refusal alone is violative

16   of § 3604(f)(3)(B).  Smith v. Powdrill, 2013 WL 5786586, at *8 (C.D. Cal. Oct. 28, 2013).

17   If an accommodation is required under the FHA, the reason for the denial is irrelevant in

18   establishing that a violation occurred.  Rodriguez v. Morgan, 2012 WL 253867, at *4

19   (C.D. Cal. Jan. 26, 2012).  Moreover, Defendants' claim glosses over  the fact that while

20   Defendants were purportedly seeking additional information, they (1) told Castellano's

21   daughter that Castellano would not be able to keep the cat; (2) gave Castellano a

22   "Notice to Perform Covenant (Cure) or Quit" directing removal of the cat; (3) gave notice

23   of termination of tenancy based on violation of the "no-pet" policy; and (4) denied

24   Castellano's request for an emotional support animal because "[she] did not show a

25   disability related need for the accommodation."  Akulow Decl., Ex. F.  Ultimately,

26   according to Castellano, she left the Apartment because she was in the untenable

27   position of choosing between keeping her cat and risking loss of her Section 8 eligibility.

28           Even taking at face value Defendants' claim that they were merely seeking

1    additional information, Defendants have still not raised an issue of material fact as to

2    refusal.  Uncertainty as to the disability is not grounds for denying a reasonable

3    accommodation request for an assistance animal.  Notice FHEO-2013-01 at 3.  In the

4    instance that a disability is not immediately clear, housing providers are permitted to ask

5    for supporting documentation from a "physician, psychiatrist, social worker, or other

6    mental health professional" indicating that the animal provides emotional support that

7    alleviates identifiable symptoms.  Id. at 3-4.  "Such documentation is sufficient if it

8    establishes that an individual has a disability and that the animal in question will provide

9    type of disability-related assistance or emotional support."  Id. at 4.  The documentation

10   provided by Dr. Kalman and the Newman Medical Clinic easily satisfies this requirement.

11   The April 8, 2013 correspondence from Dr. Kalman to APM states that Castellano

12   suffers from "anxiety disorder . . . and depression" and that "[a]n emotional support

13   animal would ease her anxiety and depression."  Espinosa Decl. Ex. 1, RFA Ex. I.

14   Plaintiffs need provide nothing more to meet the requirements of the FHA.  Since

15   Plaintiffs satisfied this requirement, Defendants had no basis to continue seeking

16   additional information and any further delay in granting the accommodation constituted

17   refusal.  There is no dispute of material fact that Defendants refused Plaintiffs' request

18   for a reasonable accommodation.

19        Plaintiffs have established a violation of 42 U.S.C. § 3604(f) for failing to provide a

20   reasonable accommodation under the FHA.  Defendants raise no triable issue of

21   material fact and the Court GRANTS partial summary judgment as to Defendants'

22   liability under § 3604(f).

23        **B.    Defendants Violated 42 U.S.C. § 3617 By Interfering with Plaintiffs'
            Rights Protected under the FHA.**

24

25        The FHA makes it unlawful "to . . . interfere with any person in the exercise or

26   enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or

27   protected by [42 U.S.C. § 3604.]"  42 U.S.C. § 3617.  The language of the FHA is to be

28   interpreted in a broad and inclusive manner.  Walker v. City of Lakewood, 272 F.3d

1   1114, 1129 (9th Cir. 2001).  "Interference" has been broadly applied to reach all

2   practices which have the effect of interfering with the exercise of rights under federal fair

3   housing laws.  Id.  Interference is the act of meddling in or hampering an activity or

4   process.  Id.

5          The undisputed facts show that Defendants meddled with Plaintiff Castellano's

6   exercise of her right to obtain a reasonable accommodation for her handicap under the

7   FHA.  Defendants responded to Castellano's initial request to keep her cat with a Notice

8   to Perform Covenant (Cure) or Quit.  Defendants responded to a similar request from

9   Stanislaus County by issuing a Notice of Termination to Castellano.  The approach taken

10  by Defendants would give a person in Castellano's position pause in seeking to enforce

11  her right to obtain a reasonable accommodation for her handicap.  See Smith v. Powdrill,

12  2013 WL 5786586, at *10 (C.D. Cal. Oct. 28, 2013) (response to reasonable

13  accommodation request by issuing a "Notice to Perform Conditions and Covenants or

14  Quit" constituted interference under § 3617).  Defendants do not contest any of these

15  facts.  Ultimately, Castellano asserts she left the Apartment due to concern that she

16  would be evicted if she continued to reside at the Apartment with her cat.

17         Plaintiffs have established a violation of 42 U.S.C. § 3617 for interfering with the

18  exercise and enjoyment of rights provided under the FHA.  Defendants raise no triable

19  issue of material fact and the Court GRANTS partial summary judgment as to

20  Defendants' liability under § 3617.

21         **C.     Defendant Addison is Vicariously Liable as the Apartment Owner.**

22          Finally, Plaintiffs ask that the Court find Defendant Addison vicariously liable for

23  the actions of Defendants APM, Akulow and Valenzuela.  Where the agent or property

24  manager of a property owner violates FHA requirements, the property owner may be

25  vicariously liable for those violations.  See Meyer v. Holley, 537 U.S. 280, 285 (2003)

26  ("[I]t is well established that the [FHA] provides for vicarious liability."); Nelson v. U.S.

27  Dep't of Hous. & Urban Dev., 320 F. App'x 635, 638 (9th Cir. 2009) (following Meyer).

28  Defendants do not dispute that during Plaintiff Castellano's tenancy at the Apartment,

14

1    Defendants APM, Akulow, and Valenzuela acted as agents of Defendant Addison, or

2    acted on behalf of Defendant Addison.  ECF No. 9 at ¶ 10; ECF No. 11 at ¶ 10; Defs.'

3    Stmt. of Undisputed Facts at ¶ 6.  Because Defendants have admitted that APM, Akulow

4    and Valenzuela are agents of Addison, the Court finds that Addison is vicariously liable

5    for the violations of §§ 3604(f) and 3617.  See Lockwood v. Wolf Corp., 629 F.2d 603,

6    611 (9th Cir. 1980) (party moving for summary judgment must offer evidence to support

7    a finding of every element of a claim for relief, except those elements admitted by the

8    opposition).  Vicarious liability is not absolute in FHA cases, and the Supreme Court

9    rejected the view that the duty not to discriminate is non-delegable.  See Meyer, 537

10   U.S. at 286-87 (applying "traditional vicarious liability rules" to violations of the FHA).

11   Here, however, Defendants have presented no evidence suggesting that vicarious

12   liability is inappropriate.  Instead, they have admitted that APM, Akulow and Valenzuela

13   were in fact agents of Addison, and that Addison directly paid Valenzuela for her work as

14   the on-site manager.  ECF No. 11 at ¶ 8.  Moreover, Defendants have failed to respond

15   to any of Plaintiffs' arguments that the Court should find Addison vicariously liable.  In

16   light of Defendants' admissions, the Court finds that Defendant Addison is vicariously

17   liable for the actions of Defendants APM, Akulow and Valenzuela.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2

3      Plaintiffs' Motion for Partial Summary Judgment (ECF No. 23) as to Defendants'

4   liability is GRANTED as follows:

5      1.  The Motion is GRANTED as to Defendants' liability under 42 U.S.C. § 3617(f).

6      2.  The Motion is GRANTED as to Defendants' liability under 42 U.S.C. § 3604.

7      3.  The Motion is GRANTED as to Defendant Addison's vicarious liability.

8      IT IS SO ORDERED.

9   Dated:  April 15, 2016

10

11

12   _____
     MORRISON C. ENGLAND, JR., CHIEF JUDGE
13   UNITED STATES DISTRICT COURT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28